IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| AMANDA GERMAN, o/b/o G.G., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 1:10cv513-CSC |
| | ) |
| MICHAEL ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Plaintiff Amanda German filed this lawsuit on behalf of her son, G.G.,[1] to review a final judgment by defendant Michael J. Astrue, Commissioner of Social Security, in which he determined that G.G. is not "disabled" and therefore, not entitled to supplemental security income benefits. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[2] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The parties have consented to the undersigned United States

---

[1] Pursuant to the E-Government Act of 2002, as amended on August 2, 2002, and M.D. Ala. General Order No. 2:04mc3228, the court has redacted the plaintiff's minor child's name throughout this opinion and refers to him only by his initials, G.G.

[2] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

Magistrate Judge rendering a final judgment in this lawsuit pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1. The court has jurisdiction over this lawsuit pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, the court concludes that the Commissioner's decision denying G.G. supplemental security income benefits should be affirmed.

## I. STANDARD OF REVIEW

An individual under 18 is considered disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I) (1999). The sequential analysis for determining whether a child claimant is disabled is as follows:

1. If the claimant is engaged in substantial gainful activity, he is not disabled.
2. If the claimant is not engaged in substantial gainful activity, the Commissioner determines whether the claimant has a physical or mental impairment which, whether individually or in combination with one or more other impairments, is a severe impairment. If the claimant's impairment is not severe, he is not disabled.
3. If the impairment is severe, the Commissioner determines whether the impairment meets the durational requirement and meets, medically equals, or functionally equals in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies this requirement, the claimant is presumed disabled.

*See* 20 C.F.R. § 416.924(a)-(d) (1997).

The Commissioner's regulations provide that if a child's impairment or impairments

are not medically equal, or functionally equivalent in severity to a listed impairment, the child is not disabled. *See* 20 C.F.R. § 416.924(d)(2) (1997). In determining whether a child's impairment functionally equals a listed impairment, an ALJ must consider the extent to which the impairment limits the child's ability to function in the following six "domains" of life: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1279 (11th Cir. 2004); 20 C.F.R. § 416.926a(b)(1). A child's impairment functionally equals a listed impairment, and thus constitutes a disability, if the child's limitations are "marked" in two of the six life domains, or if the child's limitations are "extreme" in one of the six domains. *Shinn*, 391 F.3d at 1279; 20 C.F.R. § 416.926a(d).

In reviewing the Commissioner's decision, the court asks only whether his findings concerning the steps are supported by substantial evidence. *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence is "more than a scintilla," but less than a preponderance: it "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted). The court "may not decide the facts anew, reweigh the evidence, or substitute . . . [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart,* 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (alteration in original) (quotation marks omitted). The court must, however, conduct an "exacting examination of the

3

[Commissioner's] conclusions of law." *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir. 1990).

## II. ISSUES

As presented by the plaintiff, the sole issue before the court is whether "[t]he Commissioner committed reversible error by failing to find an "extreme" limitation in the domain of interacting and relating with others." (Pl's Br., doc. # 15, at 8). It is to this issue that the court now turns.

## III. DISCUSSION

The plaintiff argues that the ALJ erred in determining that G.G. only suffered from a "marked" limitation in the domain of interacting and relating with others because treatment notes from the Dothan Behavioral Medical Clinic demonstrate that G.G. has an "extreme" limitation in this domain. (Pl's Br., doc. # 15, at 8). This argument does not withstand scrutiny.

G.G. was born on November 12, 1998, and he was eight (8) years old on the date the application for benefits was filed. (R. 17). The ALJ concluded that G.G. is not disabled and therefore denied his claim for supplemental security income. Under the first step, the ALJ found that G.G. is not engaged in substantial gainful activity. At the second step, the ALJ found that G.G. suffers from severe impairments of "attention deficit hyperactivity disorder; bipolar disorder; oppositional defiant/explosive disorder; and asthma." (*Id*.) At step three, the ALJ found that G.G. did not have an impairment or combination of impairments that met

or medically equaled a Listing in Appendix 1 of 20 C.F.R. Part 404, Subpart P, specifically, Listings 103.03, Asthma, 112.02, Organic Mental Disorders, 112.11, attention deficient/hyperactivity. (R. 17). The ALJ then considered whether G.G.'s impairments were "functionally equal" to a level of severity in a Listing. (R. 24-30).

In order to functionally equal a listing, G.G.'s impairments must result in "marked" limitations in two or more of six functional domains or an "extreme" limitation in one functional domain. 20 C.F.R. § 416.926a(a). These six functional domains are set forth in the applicable regulations: Acquiring and using information; Attending and completing tasks; Interacting and relating to others; Moving about and manipulating objects; Caring for yourself; and Health and physical well-being. *Id*. at 416.926a(b).

The ALJ concluded that G.G. has no limitation in the domain of acquiring and using information, and moving about and manipulating objects. (R. 24, 27). He further concluded that G.G. has no "less than marked" limitations in the domains of attending and completing tasks, caring for oneself, and health and well-being. (R. 25, 28-29). However, the ALJ found that G.G. has a "marked limitation" in the area of interacting and relating to others. (R. 27).

> The claimant has marked limitation in interacting and relating with others, which is consistent with the State Agency Physicians' Dr. Robert Estock, Dr. Doris S. Phillips, and Dr. Aileen McAlister's findings in Exhibits 5F and 8F. This conclusion is also supported by Ms. German's reports in Exhibit 1E, Function Report, testimony at the hearing; and behavioral problems at home and at school throughout the medical record; Dothan Pediatric Clinic in Exhibits 2F;9F; and 11F; as well as Dothan Behavioral Medical Clinic in Exhixit 10F and 13F that document behavioral problems with diagnoses of

5

> mood disorder, NOS; claimant meet (sic) criteria for depressive disorder, NOS and hypo-manic episode; ADHD, combined type; separation anxiety disorder; enuresis; impulse control disorder, NOS; conduct disorder, childhood onset type; overanxious disorder; Pica; eats paper; selective mutism; and social phobia; sleep disturbance, unspecified; pervasive developmental disorder, NOS; schizophrenia, other, unspecified.  Claimant received treatment from mood disorder, NOS with Abilify 2mg; ADHD, combined type with Focalin XR 20 mg; and conduct disorder, childhood onset type; Ms. Barbara Hughes, school counselor behavioral report in Exhibit 8E; and Dr. Jordan's report of sullen and angry appearance in consultative evaluation in Exhibit 7F.

(R. 27).

The ALJ's determination is supported by substantial evidence.  The ALJ thoroughly discussed and clearly considered all the evidence of record.  On November 18, 2005, G.G. was seen for his 7 year wellness examination at Dothan Pediatric Clinic.  (R. 174).  At that time, his mother reported that he was in the first grade, making A's.  She denied any learning difficulties.  (*Id.*)  Although G.G. was "out of control (screaming, kicking, and fighting) during the examination, the doctor was attempting to remove a foreign object from G.G.'s ear.  (R. 176).

On December 18, 2006, G.G. had his eight year old wellness examination and at that time, his mother reported that he was doing well in school.  He "[g]ets along well with other kids in school.  Gets along well at home." (R. 177).  Although the treatment note indicates a history of adjustment disorder, no medical records support that conclusion.  (*Id.*)  On May 25, 2007, G.G. was seen for a follow-up appointment after passing out at school.  (R. 179).  G.G. had gotten so angry at another student, he passed out.  (R.163, 179).

On August 3, 2007, G.G. was evaluated for

>behavioral problems at home, . . . behavioral problems at school, aggressive behavior, anger problems. Reports problems of anger to the point of shaking "so bad that he passes out" for a duration of 5-6 minutes when he was at school. Also reports problems with hyperactivity, not minding, being disrespectful to mom, aggressive behavior, short attention span, not mindin, . . . Behavior has been going on for years but is worse the past few months.

(R. 180). Although his activity and energy level appeared to be normal, G.G. was referred to a psychiatrist. (*Id.*)

On October 25, 2007, G.G. had his well child visit with Dr. Wood. (R. 183). Without elaboration, "behavior problems" is noted on the record. (*Id.*). Dr. Wood also ordered an EEG to rule out seizures. (*Id.*) He noted "probable depression." (*Id.*) An EEG on October 26, 2007 was normal. (R. 184). Again, without elaboration, ADD is noted on a November 8, 2007, treatment note. (R. 182).

School records dated October 19, 2007 demonstrate that G.G. was doing well in school, getting a satisfactory mark in conduct. (R. 181).

An undated psychiatric evaluation by Dr. Eyob Tessema noted that G.G. was "alert and oriented, in no distress, calm and cooperative with good eye contact, coherent, goal-oriented speech. . . Mood was described as "okay." Affect was neutral. Memory to remote and recent events were good. Insight and judgments were fair." (R. 192). Without explanation, Dr. Tessema diagnosed G.G. with Intermittent explosive disorder, "rule out mood disorder (in particular bipolar mood disorder)." (*Id.*) He was referred to a child neurologist for further evaluation. (*Id.*) Thereafter, Dr. Tessema noted that

>the patient had not been seen for the past four months . . . and I am not quite

> sure how well he is doing. I have no report from Dr. Kothawala, and usually I get reports from him whenever he sees patients, so I am considering that hte patient's mother is not reliable for followup appointments.

(R. 193)

On February 7, 2008, G.G. underwent a psychological evaluation by Dr. Randy Jordan, a licensed clinical psychologist. (R. 195-97). Dr. Jordan reviewed G.G.'s medical records and noted "self-reported bipolar disorder, seizures, and mood swings." (R. 195). Although G.G. was "sullen and petulant," he did not display any hyperactivity. (*Id.*) Dr. Jordan opined that G.G.'s

> Daily Living Skills are not compromised by intellectual or psychological function. Socially, the claimant functions in a somewhat isolated manner. The claimant spend the majority of their (sic) day playing video games, watching TV, and playing with animals. Because he is not cruel to animals or setting fires, he is felt to be more oppositional than conduct disorded (sic).
>
> *   *   *
>
> In terms of school and home, the claimant's ability to respond well to fellow students is mildly compromised. He is oppositional to mother who seems to cater to him to some degree. She and he need some counseling. This is an angry young man who is ADHD and has a difficult time with abandonment. Symptoms are not consistent with bipolar disorder.

(R. 196-97).

On February 11, 2008, a social security field officer interviewed a guidance counselor at G.G.'s school. She reported that G.G. had "anger issues." (R. 147). Although G.G. received break time detention on several occasions, he was never suspended from school. He would fight with other students which resulted in discipline. He was not on any

8

medication to her knowledge. (*Id.*). He was not receiving any special services. (*Id.*).

On April 24, 2008, G.G. was referred to Dothan Behavioral Medical Clinic. (R. 221). His behavior was appropriate and cooperative. His mood was constricted but his judgment was good. (R. 224). Based on his mother's complaints and the mental status examination, G.G. was assessed with: mood disorder - depressive disorder; ADHD, combined type; Separation Anxiety disorder; Enuresis; Impulse control disorder; Conduct disorder, childhood onset type; Overanxious disorder; Pica - eats paper; Selective mutism; Social phobia; Sleep disturbance, unspecified; Pervasive developmental disorder; and "Schizophrenia, other, unspecified . . . maternal cousin dx with Schizophrenia, R/o" (R. 224-25). G.G. was prescribed Abilify. He was also taken off Focalin, previously prescribed for the ADHD. It was recommended that G.G. be placed in inpatient hospitalization which his mother declined. It was also suggested that further ADHD testing be conducted. (R. 225).

On May 1, 2008, G.G.'s mother reported that his behavior "has been ok. [She hasn't] really had any problems." (R. 219). His behavior was appropriate and cooperative. (R. 220). No change in treatment was recommended. (*Id.*) On July 30, 2008, G.G. presented for medication management. (R. 217-18). Because the medication was making him sleepy, his Abilify was changed to before bedtime to avoid sleepiness. (R. 218).

On October 30, 2008, G.G. presented to the Dothan Pediatric Clinic for his 9 year old wellness examination. (R. 206-08). At that time, his mother reported calls from the school regarding G.G.'s asthma, she did not report calls regarding his behavior. (*Id.*) In fact, she

indicated no academic difficulties and no behavior problems at home or at school. (*Id*.

On November 13, 2008, G.G.'s mother reported to Dothan Behavioral Medical Clinic that G.G. was angry. (R. 215-16). His medication was changed from Abilify to Invega. (R. 216). On December 4, 2008, G.G. presented for medication management. Based on his mother's complaints, G.G. was diagnosed with Obessive-Compulsive Disorder, and he was prescribed Lexapro. (R. 214). His prescription for Invega was continued. (*Id.*) On January 8, 2009, G.G. was seen for medication management and there was no change in his medications. (R. 238-39).

On February 18, 2009, G.G.'s mother reported that G.G. had "been doing pretty good since last visit. . . .[He] hasn't had any real big episodes. He still get (sic) a little sad sometimes but. . ." (R. 235-36). There was no change in G.G.'s medication. (R. 236).

On April 8, 2009, G.G.'s mother reported that he "just burst out crying for no reason." (R. 233). He was referred to SpectraCare for therapy. (R. 234).

A limitation is extreme when it "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3). An extreme limitation is the worst ranking. *Id*. In determining the extent of limitation in the domain of interacting and relating with others, the ALJ looks at the G.G.'s ability to develop friendships, understand others' points of view, talk and share ideas. 20 C.F.R. § 416.926a(i)(2)(iv). Unquestionably, G.G. has some degree of limitation interacting and relating to other. However, the evidence does not support a finding that G.G. has an

"extreme" limitation in this area of functioning. While he has been in several fights, he has not been suspended or expelled from school. On numerous occasions, G.G.'s mother has reported no problems with G.G.'s behavior. The only evidence that suggests that G.G.'s limitation is extreme is based on his mother's reports to Dothan Behavioral Medical Clinic. Those records are conclusory, inconsistent with other medical records, and lacking in detail or supporting clinical or laboratory findings. The medical records reveal no psychological testing that substantiate the mother's numerous complaints about the severity of G.G.'s behavior. This court must accept the factual findings of the Commissioner if they are supported by substantial evidence and based upon the proper legal standards. *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987). After careful review of the record, the court concludes that the ALJ's conclusion that G.G. does not have a "extreme" impairment in the domain of interacting and relating to others meets that criteria.

## CONCLUSION

In short, the court has carefully and independently reviewed the record, and concludes that the ALJ's conclusion that G.G. is not disabled is supported by substantial evidence. Thus, the decision of the Commissioner should be affirmed.

A separate order will issue.

Done this 12th day of August, 2011.

                                       /s/Charles S. Coody
                                CHARLES S. COODY
                                UNITED STATES MAGISTRATE JUDGE